Nos. 22-10663-E, 22-10666, 22-10667

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

MITCHELL MIORELLI, *et al.*,
Objectors-Appellants

v.

TROY SMITH, *et al.*
Plaintiffs-Appellees

and

COSTA DEL MAR, INC.,
Defendant-Appellee

_____

Appeal from the United States District Court
for the Middle District of Florida
No. 3:18-cv-01011-TJC-LLL

OPENING BRIEF OF APPELLANT JOHN W. DAVIS

ERIC ALAN ISAACSON
6580 Avenida Mirola
La Jolla, CA   92037-6231
Telephone:  858-263-9581
ericalanisaacson@icloud.com

C. BENJAMIN NUTLEY
75-5915 Walua Rd
Kailua Kona, HI 96740
Telephone:  808-238-8783
nutley@zenlaw.com

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Circuit Rule 26.1-2 (a), John W. Davis declares that he is an individual, is not a subsidiary or affiliate of a publicly owned corporation, and that there is no publicly held corporation that owns ten percent or more of any stock issued by Davis.

Pursuant to Cir. R. 28-1(b) and Cir. R. 26.1-2, the following trial judges, attorneys, persons, association of persons, firms, partnerships, and corporations are believed to have an interest in the outcome of this case or appeal:

1.   Anderson, Mark E., Counsel for Defendant-Appellee.

2.   Bandas, Christopher, Counsel for Objector-Appellant Austin Valls.

3.   Bandas Law Firm, P.C., Counsel for Objector-Appellant Austin Valls.

4.   Bodiford, Bradley, Counsel for Objector-Appellant Austin Valls.

5.   Clore, Robert, Counsel for Objector-Appellant Austin Valls.

6.   Corrigan, Timothy J., the Honorable, Chief U.S. District Judge, Middle District of Florida.

7.   Costa del Mar, Inc., a Florida Corporation, Defendant-Appellee.

8.   Davis, John W., Objector-Appellant.

9.   EssilorLuxottica SA, US ADR Ticker "ESLOY", Euronext Paris Ticker "EL:EN Paris", publicly-traded ultimate parent company of Costa Del Mar, Inc., Defendant-Appellee.

10.  Gropper, Michael, Counsel for Plaintiff-Appellee.

11.  Haney, Brendan C., Plaintiff-Appellee.

12. Hargitai, Peter, Counsel for Plaintiff-Appellee.

13. Holladay, Sara F., Counsel for Defendant-Appellee.

14. Holland & Knight, LLP, Counsel for Plaintiff-Appellee.

15. Isaacson, Eric Alan, Counsel for Objector-Appellant John W. Davis.

16. Lambert, Laura Lothman, the Honorable, U.S. Magistrate Judge.

17. Mallette, Jocelyn M., Counsel for Defendant-Appellee.

18. McGuire Woods, LLP, Counsel for Defendant-Appellee.

19. Law Office of Eric Alan Isaacson, Counsel for Objector-Appellant.

20. Law Office of Sam Miorelli, P.A., Counsel for Objector-Appellant.

21. Miorelli, Mitchell George, Objector-Appellant.

22. Miorelli, Sam, Counsel for Appellant-Objector Mitchell Miorelli.

23. Nutley, Charles Benjamin, Counsel for Objector-Appellant John W. Davis.

24. Optiz, Justin R., Counsel for Defendant-Appellee.

25. Pepe, Jason E., Counsel for Objector-Appellant Austin Valls.

26. Reed, Gerald E., IV., Plaintiff-Appellee.

27. Renstrom, Laura Beard, Counsel for Plaintiff-Appellee.

28. Roberts, Joshua H., Counsel for Plaintiff-Appellee.

29. Rottmann, Emily Y., Counsel for Defendant-Appellee.

30.   Smith, Troy, Plaintiff-Appellee.

31.   Terrell Hogan Yegelwai P.A., Counsel for Objector-Appellant Austin Valls.

32.   Valls, Austin, Appellant-Objector.

33.   West, Mikell, Counsel for Objector-Appellant Austin Valls.

## STATEMENT REGARDING ORAL ARGUMENT

John W. Davis believes that oral argument would be helpful in resolving at least two issues of first impression for this Court, on which other circuits are in conflict:

(1) Are vouchers redeemable for retail products "coupons" within the ordinary meaning of that term and as used in provisions of the Class Action Fairness Act of 2005, Pub.L. No. 109-2, §§2-3, 119 Stat. 4 (2005), governing settlement approval and attorney's fees as codified at 28 U.S.C. §§1711-1712?

The circuits are in conflict on this question. The Fourth, Seventh, and Eighth Circuits all have held that vouchers redeemable for retail products are "coupons" subject to CAFA. *In re Lumber Liquidators,* 952 F.3d 471, 488 (4th Cir.2020); *In re Southwest Airlines Voucher Litig.,* 799 F.3d 701, 706 (7th Cir.2015); *Redman v. RadioShack,* 768 F.3d 622, 636-37 (7th Cir.2014). But declaring the term "coupon" to be "ambiguous" because the statute does not specifically define it, the Ninth Circuit's decision in *In re Online DVD-Rental,* 779 F3d 934 (9th 2015), the Ninth Circuit replaced the statutory term's ordinary meaning with an impressionistic open-ended multifactor balancing test. *See id.*

at 949-52, Various district courts,  including the court below in this

case, DE151:34-35, have followed *Online DVD* in dispensing with the

statute's natural ordinary meaning, producing many decisions that are

at odds with both the statutory text and its underlying legislative

purpose. The *Online DVD* framework is so unworkable that at least two

Ninth Circuit judges have called for it to be reconsidered en banc or

overruled by the Supreme Court. *See McKinney-Drobnis v. Oreshack,* 16

F.4th 594, 613 (9th Cir.2021)(Eric D. Miller, Cir.J., concurring: "The

problem is with the [*Online DVD*] test itself. In an appropriate case, we

should reconsider *Online DVD* en banc."); *Hendricks v. Ference,* 754

F.App'x 510, 516 (9th Cir.2018)(Michelle Friedland, Cir.J., concurring

in part and dissenting in part: "I hope that our court acting en banc, or

the Supreme Court, will someday put us back on track.").

    (2) Is a district court awarding attorney's fees based on a

settlement that obtains mainly coupons for class members, while

allocating all or most of any cash proceeds to pay class counsel's

attorney's fees, subject to CAFA's provision requiring the attorney's fee

award to be based on value of the coupons that are actually redeemed?

*See* 28 U.S.C. §1712(a)("If a proposed settlement in a class action

provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.").

When it comes to CAFA's restrictions on attorney's fees, the Ninth Circuit gives controlling effect to the statute's words and underlying purpose by requiring any fee award sought for the recovery of coupons to be based on the value to class members of the coupons that are actually redeemed. *See In re HP Inkjet Printer Litig.,* 716 F.3d 1173, 1180-86 (9th Cir.2013); *In re EasySaver Rewards Litig.,* 906 F.3d 747, 758-60 (9th Cir.2018); *Chambers v. Whirlpool Corp.,* 980 F.3d 645, 658-59, 660-62 (9th Cir.2019); *Roes 1-2 v. SFBSC Management, LLC,* 944 F.3d 1035, 1054 (9th Cir.2019). The Fourth, Sixth, Seventh, and Eighth Circuits have rejected the Ninth Circuit's interpretation of CAFA's attorney's fee provisions, permitting district judges to award lodestar fees even for work that produced a recovery of coupons. *See In re Lumber Liquidators,* 27 F.4th 291, 302 (4th Cir.2022)("*Lumber Liquidators II"*); *Linneman v. Vita-Mix Corp.,* 970 F.3d 621, 627 (6th Cir.2020); *Galloway v. Kansas City Landsmen, LLC,* 833 F.3d 969, 974-

75 (8th Cir.2016); *In re Southwest Airlines Voucher Litig.,* 799 F.3d 701, 706-10 & n.3 (7th Cir.2015)("this opinion creates a circuit split on the interpretation of 28 U.S.C. §1712").

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS
        AND CORPORATE DISCLOSURE STATEMENT......................i

STATEMENT REGARDING ORAL ARGUMENT............................iv

TABLE OF CONTENTS.....................................................viii

I.    JURISDICTION....................................................1

II.   ISSUES PRESENTED.............................................2

III.  STATEMENT OF THE CASE....................................3

      A.    Nature of the Case.......................................3

      B.    Statement of Facts & Procedural History.........................6

            1.    Named Plaintiffs Commence and Resolve Three
                  Separate Actions.....................................6

            2.    The Settlement Agreement Attempted to Allocate
                  $12 Million Cash to Attorney's Fees and to
                  Pay the Named Plaintiffs $10,000 Apiece  While
                  Giving Ordinary Class Members Nothing but Low-
                  Value Product Vouchers Redeemable Only for
                  Merchandise on Costa's Retail Web Site....................7

            3.    Preliminary Approval................................11

            4.    Objections.........................................12

            5.    Final-Approval Fairness Hearing......................13

            6.    Final-Approval Order...............................15

IV.   STANDARD OF REVIEW.......................................18

V.    SUMMARY OF ARGUMENT……………………………………....…19

VI.    ARGUMENT……………………………………………………...26

    A.    The District Court Erred as a Matter of Law by Holding
        that Product Vouchers Redeemable Only for Merchandise
        that Costa Sells on its Website are Cash Equivalents
        Rather than Coupons Subject to 28 U.S.C. §1712…………26

        1.    District Court Erred by Rejecting the Statutory
            Text's Ordinary Meaning…………………………...26

        2.    CAFA's Text, Structure, and Legislative History
            Indicate that the Coupons to which it Applies
            Can and Should Be Valuable and that CAFA's
            Attorney's Fee Provisions are Indeed Meant
            to Give Class Counsel Incentives to Ensure that
            Coupons in Class Actions Settlements in Fact
            be of Value to Class Members……………….………31

        3.    Even Applying the Online DVD Framework, the
            Product Vouchers are Coupons…………….………..33

    B.    The District Court Erred in Relying on Decisions Holding
        that CAFA Permits the Award Lodestar-Methodology Fees
        for the Recovery of Coupons……………………………36

    C.    Even Assuming CAFA Permitted a Lodestar Award,
        the District Court Neither Performed Any Legitimate
        Lodestar Analysis nor Awarded a Lodestar Fee, and the
        Multiplier is Wholly Unsupported…………………………43

    D.    The District Court Erred in Approving as Fair Reasonable
        and Adequate a Settlement Agreement that Allocated All
        or Most of the Cash Recovered to Class Counsel as
        Attorney's Fees and Contained Red Flags of Conflicted
        Interests and Collusion……………………………………55

E.    The District Court Erred by Including $5 Million in the Common Fund as the Value of Injunctive Relief that Named Plaintiffs Likely Lacked Article III Standing to Pursue as It Related to Marketing Practices that Costa Voluntarily Abandoned Before the Complaint in this Action was Filed……………………………………………….62

VII.  CONCLUSION………………………………………………...……………66

# TABLE OF AUTHORITIES

## CASES

*ACLU v. Barnes*,
 168 F.3d 423 (11th Cir.1999)……………………………………….19, 45-46

*Alberti v. Klevenhagen*,
 896 F.2d 927 (5th Cir.),
 *modified*, 903 F.2d 352 (5th Cir.1990)………………………….....46

*Allen v. Bedolla*,
 787 F.3d 1218 (9th Cir.2015)…………………………………....…56

*Asgrow Seed Co. v. Winterboer*,
 513 U.S. 179 (1995)……………………………………………….27

*Atlantic Richfield Co. v. Christian*,
 140 S.Ct. 1335 (2020)……………………………………….....39-40

*Barton v. U.S. Att'y Gen.*,
 904 F.3d 1294 (11th Cir.2018)………………………………….....30

*Berni v. Barilla SpA*,
 964 F.3d 141 (2d Cir.2020)……………………………………….63

*Bivins v. Wrap It Up*,
 548 F.3d 1348 (11th Cir.2008)……………………………18-19, 25, 51

*In re Bluetooth Headset Products Liability Litig.*,
 654 F.3d 935 (9th Cir.2011)………………………………….....56-60, 63

*Blum v. Stenson*,
 465 U.S. 886 (1984)……………………………………….....24, 47, 52-53

*Briseño v. Henderson*,
 998 F.3d 1014 (9th Cir.2021)………………………………….....56, 59

*Camden I Condo. Ass'n, Inc. v. Dunkle,*
    946 F.2d 768 (11th Cir. 1991)..............................................44, 50

*Caplan v. All Am. Auto Collision,*
    __F.4th__, 2022 WL 1939553 (11th Cir. June 6, 2022)...........45-46

*Chambers v. Whirlpool Corp.,*
    980 F.3d 645 (9th Cir.2019)................................vi, 21, 26, 33, 38

*Chapman v. United States,*
    500 U.S. 453 (1991)................................................................27

*City of Burlington v. Dague,*
    505 U.S. 557 (1992)..........................................................51, 54

*Devlin v. Scardelletti,*
    536 U.S. 1 (2002)....................................................................2

*In re Dry Max Pampers Litig.,*
    724 F.3d 713 (6th Cir.2013)...................................................58

*Duckworth v. Whisenant,*
    97 F.3d 1393 (11th Cir.1996)..................................................46

*In re EasySaver Rewards Litig.,*
    906 F.3d 747 (9th Cir.2018)..................vi, 19-21, 26, 32-33, 36, 38

*Eubank v. Pella Corp.,*
    753 F.3d 718 (7th Cir.2014)....................................................54

*In re Excess Value Ins. Coverage Litig.,*
    598 F.Supp.2d 380 (S.D.N.Y. 2005).........................................64

*Facebook v. Duguid,*
    141 S.Ct. 1163 (2021)............................................................39

*Fresno County Employees' Ret. Assoc. v.*
    *Isaacson/Weaver Family Trust,*
    925 F.3d 63 (2d Cir.2019)………………………………………………55-56

*Galloway v. Kansas City Landsmen,*
    833 F.3d 969 (8th Cir.2016)………………………vi-vii, 20, 41, 43, 48

*Goldberger v. Integrated Resources,*
    209 F.3d 43 (2d Cir.2000)……………………………………………….54

*Hendricks v. Ference,*
    754 F.App'x 510 (9th Cir.2018)………………………………......v, 20

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)…………………………………………………...45-48

*In re Home Depot,*
    931 F.3d 1065 (11th Cir.2019)……………………………………...…52

*In re HP Inkjet Printer Litig.,*
    716 F.3d 1173 (9th Cir.2013)………………...vi, 20, 21, 26, 33, 36-38

*Johnson v. Georgia Highway Express,*
    488 F.2d 714 (5th Cir.1974)…………………………...16, 24, 44, 50-53

*Johnson v. NPAS Solutions,*
    975 F.3d 1244 (11th Cir. 2020)……………………………………....11, 18

*Kennedy v. Floridian Hotel, Inc.,*
    998 F.3d 1221, 1231 (11th Cir. 2021)……………………………....1, 63

*Kim v. Allison,*
    8 F.4th 1170 (9th Cir.2021)…………………………………....25, 64, 66

*Linneman v. Vita-Mix Corp.,*
    970 F.3d 621 (6th Cir.2020)………………………...vi, 22, 42-43, 47, 48

*In re Lumber Liquidators,*
  952 F.3d 471 (4th Cir.2020)………………….....iv, 20, 26, 28-29, 31

*In re Lumber Liquidators,*
  27 F.4th 291 (4th Cir.2022)("*Lumber Liquidators II*")………..vi, 43

*McKinney-Drobnis v. Oreshack,*
  16 F.4th 594 (9th Cir.2021)…………………...v, 19, 20, 28, 33, 35-37

*Marx v. General Revenue Corp.,*
  568 U.S. 371 (2013)…………………………………………………..39

*Mississippi ex rel. Hood v. AU Optronics Corp.,*
  571 U.S. 161 (2014)…………………………………………………..30

*Norman v. Housing Authority,*
  836 F.2d 1292 (11th Cir.1988)……………………24-25, 45-48, 51, 53

*In re Online DVD-Rental,*
  779 F3d 934 (9th 2015)………………………….iv-v, 21, 26-27, 33-36

*Park 'N Fly v. Dollar Park & Fly,*
  469 U.S. 189 (1985)……27

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,*
  478 U.S. 546 (1986)……………………………………………...51, 53

*Perdue v. Kenny A. ex rel. Winn,*
  559 U.S. 542 (2010)………………………………………...47, 49, 51-53

*Perrin v. United States,*
  444 U.S. 37 (1979)………………………………………………....27

*Redman v. RadioShack,*
  768 F.3d 622 (7th Cir.2014)…………………………....iv, 30, 48

*Rimini Street, Inc. v. Oracle USA,*
　　139 S.Ct. 873 (2019)……………………………………………………...39-40

*Rodriguez v. Disner,*
　　688 F.3d 645 (9th Cir. 2012)……………………………………….…62

*Roes 1-2 v. SFBSC Management, LLC,*
　　944 F.3d 1035 (9th Cir.2019)………………....vi, 21, 25, 56-60, 63-64

*Ruhlen v. Holiday Haven Homeowners,*
　　28 F.4th 226 (11th Cir.2022)………………………………………..29

*Schutte v. Ciox Health, LLC,*
　　28 F.4th 850 (7th Cir.2022)………………………………………..41

*Sebelius v. Cloer,*
　　569 U.S. 369 (2013)………………………………………………..30

*SEC v. Graham,*
　　823 F.3d 1357 (11th Cir.2016)……………………………………...27

*Shapo v. Engle,*
　　463 F.3d 641 (7th Cir. 2006)……………………………………….61

*In re Southwest Airlines Voucher Litig.,*
　　799 F.3d 701 (7th Cir.2015)…………………….....iv, vii, 31, 39, 43

*Spencer v. Specialty Foundry Products,*
　　953 F.3d 735 (11th Cir.2020)……………………………………...29-30

*Staton v. Boeing Co.,*
　　327 F.3d 938 (9th Cir.2003)……………………….....25, 56, 58, 61

*Territory of Guam v. United States,*
　　141 S.Ct. 1608 (2021)………………………………………………..39

*Tyler v. Michaels Stores,*
　　150 F.Supp.3d 53 (D.Mass.2015)……………………….…..20, 29

*In re Walter Energy,*
    911 F.3d 1121 (11th Cir.2018)……………………………………......30

*Vega v. T-Mobile USA,*
    564 F.3d 1256 (11th Cir.2009)…………………………………………...18

*In re Wild,*
    994 F.3d 1244 (11th Cir.2021)(en banc)………………………....29, 40

## U.S. CONSTITUTION

Article III………………………………………………………......1, 64-65

## STATUTES

Class Fairness Act of 2005 ("CAFA")……………………….……*passim*

Class Action Fairness Act of 2005,
    Pub.L. No. 109-2, §§2-3, 119 Stat. 4 (2005)…………………………iv

15 U.S.C. §2304………………………………………………………....4

28 U.S.C. §1332(d)…………………………………………………....1

28 U.S.C. §1332(d)(11)(B)(ii)(I)…………………………………...29

28 U.S.C. §1712……………………………………...iv, 5, 20, 31, 41

28 U.S.C. §1712(a)………………………………...v-vi, 6, 21, 36-40, 42-43

28 U.S.C. §1712(b)……………………………………………...37-39

28 U.S.. §1712(b)(1)……………………………………………...42

28 U.S.C. §1712(c)...............................................................37-39, 42

28 U.S.C. §1712(e)..................................................................6, 55

Florida Deceptive and Unfair Trade Practices Act,
    Fla.Stat. §§501.201 *et seq*…………………………………….....…4

**RULES**

Fed.R.Civ.P. 23(e)…………………………………………………..…55

Fed.R.Civ.P. 23(e)(2)(C)(ii)…………………………………………55

Fed.R.Civ.P. 23(e)(2)(C)(iii)…………………………………….…55

**LEGISLATIVE HISTORY**

S.Rep. No. 109-14 at 15 (2005),
    *reprinted in* 2005 U.S.C.C.A.N. 3,
    *and available online at*
    https://bit.ly/SenRep109-14 ...............................................19, 32-33

**DICTIONARIES**

*Merriam-Webster's Collegiate Dictionary,* "Coupon," def. 2
    (11th ed. 2012)……………………………………………......…28

Merriam-Webster's online dictionary
    https://bit.ly/MerrWebCoupon ;
    https://www.merriam-webster.com/dictionary/coupon ..................28

3 *Oxford English Dictionary*, "coupon" def. 2.a.
    (2d ed. 1989)………………………………………………………..28

## SECONDARY AUTHORITY

Richard A. Posner,
    *Statutory Interpretation—in the Classroom
    and in the Courtroom,*
    50 U.Chi.L.Rev. 800, 812 (1983)……………………………………...41

## I.    JURISDICTION

The district court had jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), as codified at 28 U.S.C. §1332(d), because the proposed class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. DE1:3-4¶¶13-19; DE84:4-5¶¶17-23.[1] But it likely lacked Article III jurisdiction to grant the prospective injunctive relief included in its final order, as Named Plaintiffs failed to demonstrate any likelihood of imminent injury from practices that the defendant had ceased before the complaint in this action was filed. *See Kennedy v. Floridian Hotel, Inc.,* 998 F.3d 1221, 1231 (11th Cir. 2021)(Article III "standing to pursue injunctive relief requires a separate showing of a real and immediate threat of future injury"); *see infra* 64-65.

Objector-Appellant John W. Davis is a member of the class who appeared below and timely objected, DE112, to the proposed settlement

_____

[1] Citations herein are to documents in the district court record, by the Docket Entry (DE) number. Thus, the initial complaint would be cited as "DE1." Pinpoint citations to pages and/or paragraphs within a document follow a colon, and generally employ the pagination of the original document, and or the pagination assigned by ECF.

of the action, and who is bound by the district court's final judgment entered January 27, 2022. DE182.

This Court has jurisdiction under 28 U.S.C. §1291 to review an objecting class member's timely appeal from the district court's order approving a class-action settlement binding him and disposing of the case as to all parties and claims. *Devlin v. Scardelletti,* 536 U.S. 1, 14 (2002).

Davis timely filed his notice of appeal on February 28, 2022. DE186.

## II.   ISSUES PRESENTED

1.   Are the Settlement Agreement's "Product Vouchers," that class members can redeem only for Costa merchandise carried on its Internet web site, and that expire worthless two years after issuance, cash equivalents, or are they better characterized as "coupons" under 28 U.S.C. §1712?

2.   Did the district court err by excusing the attorney's fee award from CAFA's requirement that any award of attorney's fees based on the recovery of coupons "shall be based on the value to class members of the coupons that are redeemed"?

3.    Does the lodestar methodology permit a district court to reverse-engineer a lodestar fee award and multiplier from a percent-of-fund fee award that is based on factors that controlling precedents hold cannot be used to justify a multiplier of the lodestar?

4.    Did the district court err by approving as fair, reasonable, and adequate a settlement agreement driven by attorney's fees and full of red flags indicating collusion and conflicts of interest?

5.    Did the district court err by including in the common fund from which Class Counsel's percent-of-fund fee award was calculated the purported value of undifferentiated injunctive relief?

## III.    STATEMENT OF THE CASE

### A.    **Nature of the Case**

Defendant-Appellee Costa Del Mar sells sunglasses for upwards of $200 a pair, and for a time marketed them as protected by "lifetime warranties" promising repair of damaged glasses for a merely "nominal" fee. Plaintiffs-Appellees alleged that Costa's marketing promises were false, and that Costa improperly charged excessive repair, shipping, and

handling fees for glasses requiring repair. Named Plaintiffs variously filed, and in this proceeding together settled, three separate actions that variously asserted violations of the Florida Deceptive and Unfair Trade Practices Act, Fla.Stat. §§501.201 *et seq*., and of the Magnuson-Moss Warranty Act, 15 U.S.C. §2304.

Some three years after Costa voluntarily ceased the challenged marketing practices, Costa and the Named Plaintiffs reached a Settlement Agreement (and then a Revised Settlement Agreement or "RSA") designed to give class members "Product Vouchers" that are redeemable only for Costa products merchandised on its website—while providing for Costa to pay $12 million in cash for Class Counsel's attorneys' fees and expenses, plus "incentive awards" of $10,000 apiece to the three individual Named Plaintiffs. RSA§10(B)(DE98-1:28[ECFp29]; DE151:45-46; DE181:17. Ordinary class members would receive Product Vouchers that, while bearing nominal face values of from $8.99 and $19.99, would be redeemable only for Costa merchandise. RSA§IV(D)(DE98-1:15-16[ECFpp16-17]). Although class members all had purchased Costa sunglasses, which typically sell for upwards of $200 a pair, the Product Vouchers' low face values are

enough only to cover promotional Costa-branded accessories such as decals, hats, or t-shirts, unless the class member using a voucher coughs up additional cash. *See* RSA(Ex.3)(DE98-1:Ex3[ECFpp61-70]). Although the settling parties' lawyers surely knew that many—likely most—of the vouchers would never be redeemed, they placed the aggregate face value of the vouchers at $28 million in effect assuming that every voucher would be redeemed for its full face value. DE146:55(line22)-56(line2).

The settling parties expected the full $12 million that the RSA provided to be paid to Class Counsel as attorneys' fees and expenses would in fact be so allocated, but the RSA included a clause stating that any reduction of attorney's fees would "inure to the benefit of the class." RSA§X(A)(DE98-1:28[ECFp29]. The district court awarded fees of $8 million, directing that the $4 million difference be distributed to the class.

This appeal concerns first and foremost whether Product Vouchers that can be used only for Costa merchandise and that expire in two years amount to cash equivalents, or if they are instead "coupons" for the purposes of the Class Action Fairness Act, 28 U.S.C. §1712

("CAFA"), which requires heightened judicial scrutiny of class-action settlements involving the recovery of coupons, 28 U.S.C. §1712(e), and which provides: "If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. §1712(a).

B.   **Statement of Facts & Procedural History**

1.   Named Plaintiffs Commence and Resolve Three Separate Actions

This litigation represents the culmination of three putative class actions filed over the course of two years challenging Costa's misleading warranty practices.  Plaintiff-Appellee Brendan Haney filed *Haney v. Costa Del Mar,* Case No. 16-2017-CA-004794-XXXX-MA, Fourth Judicial Circuit of Florida ("*Haney* Action") asserting Florida state-law claims on July 28, 2017.

On August 20, 2018, while *Haney* was pending in the Florida appellate court, Haney's counsel filed this action captioned *Smith v. Costa Del Mar,* Case No.: 3:18-cv-1011-TJC-JRK in the Middle District of Florida ("*Smith* Action") alleging violations concerning Costa's

warranty-repair "processing fee" and asserting federal Magnuson-Moss

claims. DE1. On April 3, 2019, Haney's counsel filed yet another

putative class action in the Middle District of Florida captioned *Reed v.*

*Costa Del Mar,* Case No. 6:19-cv-1751-Orl-37LRH (M.D. Fla.)("*Reed*

Action"), this time alleging violations of Florida's Deceptive and Unfair

Trade Practices Act ("FDUTPA").

The parties reached a global resolution of *Haney, Reed,* and *Smith*

on February 11, 2020.  Plaintiffs then filed an amended complaint in

*Smith* to consolidate claims and classes from all three cases. DE84.

> 2.    The Settlement Agreement Attempted to Allocate
> $12 Million Cash to Attorney's Fees and to Pay the Named
> Plaintiffs $10,000 Apiece While Giving Ordinary Class
> Members Nothing but Low-Value Product Vouchers
> Redeemable Only for Merchandise on Costa's Retail Web
> Site

Class Counsel and Costa's counsel together negotiated a

Settlement Agreement that they revised after two preliminary approval

hearings. DE201 (07/17/2020 Preliminary Approval Hearing); DE202

(09/01/2020 Preliminary Approval Hearing). The Revised Settlement

Agreement ("RSA") provided for Costa to pay $12 million cash intended

to be allocated entirely to Class Counsel, RSA§10(A)(DE98-1:27-

28(ECFpp28-29), and provided for the individual Named Plaintiffs to be

paid $10,000 apiece, RSA§10(B)(DE98-1:28(ECFp29)), while giving

ordinary class members like Davis nothing but low-value Product

Vouchers redeemable only for Costa products merchandised on its retail

web site. RSA§IV(D)(DE98-1:15-16[ECFpp16-17]).

 The RSA calls for the creation of a fictitious "Settlement Fund" to

which they attributed a nominal value of $40 million, but that did not

actually require Costa to pay $40 million into a real common-fund

recovery. According to the RSA's terms the bulk of the so-called

"Settlement Fund" would be Product Vouchers, most of which could be

expected to expire unused:

> Defendant further agrees to dedicate ***a Settlement Fund in the amount of $40,000,000*** (Forty Million and No/100 Dollars), ***from which the following will be paid***: (i) ***payments to the Class Members in the form of Product Vouchers, as discussed in Sections D. and E.*** below; (ii) Incentive Awards to Plaintiffs; (iii) payments to Plaintiffs' Class Counsel for approved Attorneys' Fees, Costs, and Expenses; (iv) any costs associated with disseminating the notice and otherwise implementing the notice program and claims administration specified in Section V.; and (v) if due to be paid in accordance with the terms of this Agreement, the Cy Pres Payment.

RSA§IV(A)(DE98-1:14[ECFp15])(emphasis added).

The RSA provides that class members "shall be entitled to receive from the Settlement Fund one or more Product Voucher(s) with a two-year expiration date from the date of issuance of the Product Voucher, which can be redeemed via Costa's online web store or via a toll-free number for Costa merchandise." RSA§IV(D)(DE98-1:15[ECFp16]). Although the RSA misdescribes the vouchers as "akin to a gift card," it specifies that "each separate Product Voucher is subject to one-time use with no residual value." RSA§IV(F)(DE98-1:17[ECFp18]). That means that if a voucher is used for any purchase transaction priced below the voucher's face value, the difference between the purchase price and the voucher's face value are forfeited. To benefit from the Product Vouchers' full face value thus requires class members to enter transactions with Costa at prices higher than the vouchers' face value, and to make up the difference by paying Costa cash. Absent further expenditures by a class member, each voucher has only enough face value for class members to obtain low-value Costa-branded promotional accessories such as decals, hats, or t-shirts. DE98-1:Ex3[ECFpp61-70].

Although the settling parties' aggregate valuation of the vouchers assumed a 100% redemption rate for vouchers slated to expire

worthless in just two years, both Class Counsel and Costa's lawyers obviously knew that if the RSA received final approval many (likely most) vouchers would never be redeemed. They also knew that the vouchers could be deemed "coupons" under CAFA, which strictly limits attorney's fees by providing: "If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 15 U.S.C. §1712(a).

Placing their own financial interests before those of the class to whom they owed a fiduciary duty, Class Counsel prevailed on Costa's lawyers to accept a "kill switch" that would void the Settlement if the district court ever tried to apply CAFA to protect the class's interests:

> [I]f the Court construes the settlement as a "coupon" settlement such that the provisions of 28 U.S.C. §1712 apply, then [class] certification shall be void and this Agreement and all orders entered in connection therewith, including but not limited to any order conditionally certifying the Class, shall become null and void and shall be of no further force and effect, and each Party shall retain all their respective rights as they existed prior to the execution of the Agreement....

RSA§III(B)(DE98-1:13-14[ECFpp14-15]).

Further seeking to insulate their attorney's fees from class members' objections, Class Counsel arranged with Costa's lawyers to include a provision meant to ensure that objectors' counsel would never be compensated for pressing valid objections that benefit the class: "[T]he Parties hereto agree that a Class Member who objects to the Settlement shall not be entitled to recovery of all or any portion of Attorneys' Fees, Costs and Expenses and that the equitable common-fund doctrine does not apply to this Settlement." RSA§IX(C)(DE98-1:27[ECFp28]). (The district court subsequently struck this provision "as against public policy." DE151:27).

The Settling Parties also provided for "incentive" payments to each Named Plaintiff of $10,000 apiece, RSA§X(B)(DE98-1:28[ECFp29], which this Court ruled illegal in *Johnson v. NPAS Solutions,* 975 F.3d at 1265-71; *see* DE151:45-46; DE181:1.

### 3.    Preliminary Approval

The settling parties sought approval of their Settlement Agreement and, after some relatively minor revisions, the district court ultimately granted  preliminary approval of the RSA. DE201

(07/17/2020 preliminary-approval hearing); DE202 (09/01/2020 preliminary-approval hearing); DE102 (preliminary-approval order).

4. Objections

Mr. Davis timely objected on March 1, 2021, arguing inter alia that CAFA requires class counsel's fee award to be based on the redemption of the vouchers, *see* CAFA, 28 U.S.C. §1712(a). DE112:5[ECFp6]. Two other class members, Mitchell George Miorelli and Austin Valls, also objected. DE117 (Miorelli); DE115 (Valls).

Davis and Valls both noted that the RSA provides that any reduction of Class Counsel's proposed $12 million attorney's fee award would "inure to the benefit of the class." DE115:5[ECFp6] (Valls); DE112:1, 6-7[ECFpp2, 7-8] (Davis). But only Davis's Objection insisted from the outset that any reduction of the cash attorney's fee award must be paid to class members ***in cash*** rather than being converted to vouchers, as Class Counsel and Costa's counsel had together planned. DE112:1, 6-7[ECFpp2, 7-8](quoting DE98-1:27-28§X(A)[ECFpp28-29]).

Davis also challenged several impermissible provisions of the settlement indicating collusion. RSA§IX(C)(DE98-1:27[ECFp28]); DE112:22-23[ECFpp23-24]. He objected that class counsel had placed

their own financial interests before those of the class by arranging to scuttle the RSA if the court ever found the Product Vouchers are "coupons" under CAFA, which mandates that "the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 15 U.S.C. §1712(a).

Davis argued that this "kill switch" provision manifested a disabling conflict of interest for class counsel, as it is unethical for class counsel to hold purportedly valuable relief hostage solely to obtain favorable treatment on attorneys' fees. DE112:2-3, 14-16[ECFpp3-4, 15-17]. Unable to defend the provision, the settling parties abandoned it. DE134:16[ECFp17]n.15; *see also* DE151:27.

Davis also challenged the Named Plaintiffs' expert's declaration on valuation. DE114.

### 5.    Final-Approval Fairness Hearing

At the final-approval hearing Davis's counsel, Eric Alan Isaacson, reiterated Davis's contentions that the case involved coupons subject to CAFA, DE146:8(line21)-11(line4), and that any reduction of Class Counsel's attorney's fee must inure to the benefit of the class in the

form of cash payments rather than the upward adjustment of voucher face values as Class Counsel and Costa's lawyers had planned. DE146:14(line23)-15(line3). He suggested, moreover, that although the RSA could not be approved as fair, reasonable, and adequate if $12 million were allocated to Class Counsel, it might be approvable if Class Counsel's attorney's fee award were cut to around $2 million, so that $10 million could be distributed to class members in the form of cash payments. DE146:11(line11)-12(line11).

Class Counsel insisted that the settling parties (originally secret) agreement and understanding was that any reduction of attorney's fees would inure to the benefit of the class only in the form of incrementally increased face values of the Costa Product Vouchers:

> THE COURT: … But it says any reduction in the fees will inure to the benefit of the class. Is that—you're telling me the understanding you-all had is that it would go back into the vouchers?

> MR. HARGITAI: Yes, that is

> THE COURT: I guess one problem with that is that that—doesn't that help Costa out? Because instead of a million dollars in cash, they've just now given a million dollars more in vouchers, … in other words, it's not the same thing, is it?

MR. HARGITAI: Your Honor, if—you know, if I were a dishonest person, I would say make them pay it, but that is—that was the gist of our agreement. It wasn't to benefit Costa. That is just the way we agreed to it.

I wish Costa would have to pay the $10 million in cash out, or even more. But, honestly, that's—that's the way we had discussed it.

THE COURT: So anything that I give less than $12 million to you or to your firm—so let's say it's $2 million less, so it's—let's say it's 10 million and it's 2 million less. That goes back into the voucher pool and increases the amount of the vouchers by whatever the factor is …—that's a windfall for Costa, isn't it?

Because instead of actually paying out 2 more million dollars in cash, they've now got ***this voucher thing***, which ***I think we can all agree***, based on redemption rates and based on other factors, ***is not the same as cash***.

MR. HARGITAI: That is true, Your Honor. …

DE146:72(line7)-73(line12).

### 6.     Final-Approval Order

On September 21, 2021, the district court entered an order approving the RSA, acknowledging that "the Eleventh Circuit has not yet provided guidance on the meaning of coupon settlements," but ruling that the Product Vouchers are not "coupons" under CAFA. DE151:34. The district court conceded that "this settlement presents a close call." DE151:37.

The district court agreed with Davis that Named Plaintiffs' valuation of the injunctive relief ranging between $47,618,189 and $58,210,558, DE96-1:16, was unsupported. DE151:22-23. The district court instead valued the undifferentiated injunctive relief at Costa's $5 million purported cost of compliance, DE151:22-23, when in fact Costa's cost of compliance would be zero, as it had voluntarily ceased the challenged practices some three years before. *See* DE200:6(lines 3-9); DE109-2:9¶21, 12¶28, 15¶34; *see infra* 64-65. The district court then added the $5 million to the $27.2 million face value of the vouchers, thereby valuing the RSA at "approximately $32 million." DE151:42-43.

The district court calculated Class Counsel's attorney's fee as a percentage of the fictitious $32 million "common fund." DE151:42-43. Based on the twelve "*Johnson* factors" from *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-719 (5th Cir.1974), the district court determined it would award 25% of the value of this $32 million "fund," or $8 million, to Class Counsel as attorney's fees.  DE151:40-43. The district court then performed a cursory lodestar cross-check, by dividing the $8 million award by Class Counsel's claimed lodestar and

thereby obtaining a "multiplier" of 2.8—which the district court found "appropriate." DE151:43-44.

Even though the resulting attorney's fee of $8 million was $4 million less than Class Counsel's requested fee, Class Counsel still would receive twice as much in cash as members of the class who the RSA was supposed to benefit.

The district court ordered additional briefing on how the $4 million in unawarded fees would be "handled." DE151:45. The settling parties had previously taken the position that a reduction in the cash attorney's fees would inure to the benefit of the class only by increasing the vouchers' face value. DE202:15(lines13-20); DE146:72(line7)-73(line12)(final approval hearing). But Davis had consistently argued for a distribution to the class in the form of cash. DE112:6-7[ECFpp7-8] (Davis Objection); DE146:11(line11)-12(line11), 14(line23)-16(line3), 85(lines9-14)(final approval hearing), and the district court ultimately agreed, directing that the $4 million reduction in attorney's fees be distributed to class members as cash. DE181:6.

The district court struck the RSA's prohibiting fee awards to objectors' counsel "as against public policy, to ensure that objectors are not chilled from bringing forth reasonable objections." DE151:27.

The court entered final judgment on January 27, 2022. DE181, DE182. Davis timely filed his notice of appeal on February 28, 2022. DE186.

## IV.    STANDARD OF REVIEW

Orders certifying a class action, approving its settlement, or awarding attorneys' fees, ordinarily are reviewed for abuse of discretion. *Johnson v. NPAS Solutions,* 975 F.3d 1244, 1251 n.2 (11th Cir. 2020)(settlement & fees); *Vega v. T-Mobile USA,* 564 F.3d 1256, 1264-65 (11th Cir.2009)(class certification); *Bivins v. Wrap It Up,* 548 F.3d 1348, 1351-52 (11th Cir.2008)(attorney's fees).

> A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous. A district court may also abuse its discretion by applying the law in an unreasonable or incorrect manner.

*Vega,* 564 F.3d at 1265 (citation omitted).

Davis's contentions on appeal primarily present questions of law subject to de novo review. Application of CAFA's coupon provisions is

reviewed *de novo*, *McKinney-Drobnis*, 16 F.4th at 603, as are the proper standards for awarding attorneys' fees. *Bivins,* 548 F.3d at 1351; *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir.1999).

## V.    SUMMARY OF ARGUMENT

This case presents a classic paradigm of the so-called "coupon settlement" that Congress designed CAFA to address. Class Counsel negotiated with defendant Costa's lawyers to obtain a Settlement Agreement allocating $12 million cash entirely to themselves, and paying individual Named Plaintiffs $10,000 apiece in cash, with the rest of the class to receive nothing but Product Vouchers redeemable only for Costa products merchandised on its retail website. Even with the district court's $4 million reduction of Class Counsel's attorney's fees, from $12 million to $8 million, and its order redirecting the $4 million cash to the class (as Davis had insisted), the case remains one "'in which most—if not all—of the monetary benefits went to the class counsel, rather than the class members those attorneys were supposed to be representing.'" S.Rep. No. 109-14 at 15 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, *and available online at* https://bit.ly/SenRep109-14 ; *see In re EasySaver Rewards Litig.,* 906 F.3d 747, 755 (9th

Cir.2018)(quoting same); *Galloway v. Kansas City Landsmen,* 833 F.3d 969, 972 (8th Cir.2016); *In re HP Inkjet Printer Litig.,* 716 F.3d 1173, 1179 (9th Cir.2013).

The district court erred by holding that the case is not subject to CAFA. First and foremost, it erred by holding that Product Vouchers—redeemable only for Costa merchandise marketed on its website—are cash equivalents rather than "coupons" as used in 28 U.S.C. §1712. The Supreme Court and this Court both hold that undefined statutory terms must be given their ordinary meaning, and "the ordinary meaning of 'coupon' encompasses 'any type of award that is not cash or a product itself, but that class members can redeem to obtain products or services or to help make future purchases.'" *McKinney-Drobnis*, 16 F.4th at 613 (Eric D. Miller, Cir.J., concurring)(quoting *Hendricks v. Ference,* 754 F.App'x 510, 514 (9th Cir.2018)(Michelle Friedland, Cir.J., concurring in part and dissenting in part)); *accord In re Lumber Liquidators,* 952 F.3d 471, 488 (4th Cir.2020); *Tyler v. Michaels Stores,* 150 F.Supp.3d 53, 60 & n.14 (D.Mass.2015). Costa Product Vouchers clearly fall within the ordinary meaning of "coupon" as used in 28 U.S.C. §1712. *Infra* 26-33.

But even if the statutory text's ordinary meaning were abandoned in favor of the impressionistic approach that the Ninth Circuit pioneered in *In re Online DVD-Rental,* 779 F3d 934 (9th Cir.2015), Product Vouchers that are redeemable only for Costa's retail products, and subject to expiration in two years, cannot be deemed cash equivalents. They are coupons even under *Online DVD. Infra* 33-36.

The district court accordingly erred by flouting CAFA's mandate that "[i]f a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. §1712(a). Ninth Circuit precedents get this principle, at least, right. *HP Inkjet,* 716 F.3d at 1180-86; *EasySaver,* 906 F.3d at 758-60; *Chambers v. Whirlpool Corp.,* 980 F.3d 645, 658-59, 660-62 (9th Cir.2019); *Roes 1-2 v. SFBSC Management, LLC,* 944 F.3d 1035, 1054 (9th Cir.2019). *Infra* 36-43.

Class Counsel may counter that several circuits have rejected Ninth Circuit's plain-meaning interpretation of §1712(a)'s limitation of attorney's fees, permitting lodestar awards for the recovery of coupons

when the Ninth Circuit would not. But the Ninth Circuit's interpretation on this point best accords with the statutory text and purpose. And even decisions holding that lodestar awards are appropriate for the recovery of coupons emphasize that "a district court will often abuse its discretion if it fails to consider the redemption rate as part of [its] analysis." *Linneman v. Vita-Mix Corp.,* 970 F.3d 621, 628 (6th Cir.2020). The district court clearly abused its discretion by failing to consider redemption rates in approving the RSA and awarding attorney's fees. *Infra* 36-43.

The district court did not, in any event, award attorney's fees under a proper lodestar methodology. It awarded attorney's fees as 25% of a purported $32 million "common fund" consisting of $27.2 million in face value of Costa's unredeemed Product Vouchers, plus $5 million for undifferentiated injunctive relief, which according to the district court, added up to "approximately $32 million." DE151:42-43. Twenty-five percent of the $32 million produced an attorney's fee award of $8 million. DE151:43. The district court then performed a cursory lodestar cross-check, dividing the $8 million percent-of-fund award by Class Counsel's claimed lodestar, and finding that the percent-of-fund fee

award amounted to a multiple of 2.8 times that lodestar. DE151:43-44. Citing other percent-of-fund decisions, the district court pronounced this to be an "appropriate" cross-check multiplier. DE151:43-44.

But an attorney's fee cannot be calculated in that fashion under the lodestar methodology. Controlling precedent requires district courts applying the lodestar methodology to start by evaluating the attorney's time expended, and whether it was both necessary to and justified by the results achieved. The controlling lodestar-methodology decisions require the district court to carefully review the attorneys' time, eliminating hours that were redundant or unnecessary, or otherwise not justified by the results. The resulting hours then are multiplied by the attorney's reasonable hourly rates—producing their "lodestar," which is the presumptively reasonable fee unless it still is too large considering the results achieved. The controlling lodestar-methodology precedents then impose a strong presumption that the lodestar provides the reasonable attorney's fee—permitting an upward adjustment or "multiplier" only in truly exceptional cases, and only for reasons that are not already "subsumed" in the lodestar. *Infra* 43-55.

"Any enhancement begins with a finding that the results were exceptional," *Norman v. Housing Authority,* 836 F.2d 1292, 1306 (11th Cir.1988), a finding entirely absent from the decision below. "Even if the court found the results obtained to be exceptional, no enhancement for these results would be justified unless the court also finds that class counsel's representation was superior to that which would have been expected considering the rates requested." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 899 (1984)). No such finding was made—nor could it have been. Nothing in the record below supports a multiplier of 2.8 given the lodestar methodology's strong presumption that an unenhanced lodestar provides the reasonable attorney's fee award in all but a few truly exceptional cases. *Infra* 43-55.

The multiplier here cannot be justified on the basis of the percent-of-fund fee award from which it was derived. The district court arrived at the 2.8 multiplier by dividing the 25% percent-of-fund award that it reached using the twelve "*Johnson* factors" from *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717-719 (5th Cir.1974). But those factors ordinarily cannot be relied on to support a lodestar multiplier. This Court held in *Norman,* 836 F.2d at 1298-99, "that the lodestar"

itself already "presumptively includes all of the twelve factors." "[T]hey should not be reconsidered in making either an upward or downward adjustment to the lodestar—doing so amounts to double-counting." *Bivins,* 548 F.3d at 1352. Specific factors that the district court referenced cannot be used to justify the multiplier in this case. *Infra* 50-55.

The district court erred, moreover, by approving a settlement that, attempting to allocate virtually all of the cash to Class Counsel, was rife with red flags of conflicted interests and collusion. *Infra* 55-62.

It erred as well by including $5 million for undifferentiated injunctive relief in the $32 million base for its 25% percent-of-fund award. Settling "'parties ordinarily may not include an estimated value of undifferentiated injunctive relief in the amount of an actual or putative common fund for purposes of determining an award of attorney's fees.'" *Roes 1-2,* 944 F.3d at 1056 (quoting *Staton v. Boeing Co.,* 327 F.3d 938, 974 (9th Cir.2003)); *accord Kim v. Allison,* 8 F.4th 1170, 1181 (9th Cir.2021). The injunctive relief had no value to class members, for Costa voluntarily abandoned its challenged marketing practices some three years before—indeed, more than seven months before the initial complaint in this action was filed. *Infra* at 62-66.

## VI. ARGUMENT

### A. The District Court Erred as a Matter of Law by Holding that Product Vouchers Redeemable Only for Merchandise that Costa Sells on its Website are Cash Equivalents Rather than Coupons Subject to 28 U.S.C. §1712

#### 1. The District Court Erred by Rejecting the Statutory Text's Ordinary Meaning

The primary purpose of CAFA was "to curb perceived abuses of the class action device," such as "the coupon settlement, where defendants pay aggrieved class members in coupons or vouchers but pay class counsel in cash." *Id.* at 1177 (quotation and citation omitted). CAFA thus provided a new hope to "tether the value of an attorneys' fees award to the value of the class recovery" in coupon settlements. *Id.* at 1178.

*Chambers,* 980 F.3d at 658 (quoting *HP Inkjet*, 716 F.3d at 1177-78);

*accord, e.g., Lumber Liquidators,* 952 F.3d at 488; *Roes 1-2,* 944 F.3d at

1053.

"Congress targeted attorney's fees awards in 'coupon' settlements

out of a concern that such awards had been regularly inflated by the

courts' unreasonable acceptance of the face value of nonmonetary

relief," such as the Product Vouchers in this case. *Lumber Liquidators,*

952 F.3d at 488 (citing *EasySaver,* 906 F.3d at 755).

But what is a coupon? The Ninth Circuit said in *Online DVD* that

Congress failed to define "coupon" leaving to courts that task—though

in truth, the *Online DVD* panel provided no real definition, but only an impressionistic open-ended multi-factor balancing formulation. *See Online,* 779 F.3d at 950. The district court in this case took the same approach. "The statute does not define 'coupon,'" it held, "so district courts must look to legislative history and subsequent case law to discern its meaning." DE151:33. Asserting that "[d]istrict courts within the Eleventh Circuit have largely adopted the Ninth Circuit's rationale" in *Online DVD,* the district court joined them in ignoring the statutory text's ordinary meaning. DE151:36.

That was error. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly v. Dollar Park & Fly,* 469 U.S. 189, 194 (1985). "When terms used in a statute are undefined, we give them their ordinary meaning." *Asgrow Seed Co. v. Winterboer,* 513 U.S. 179, 187 (1995); *accord, e.g., Chapman v. United States,* 500 U.S. 453, 462 (1991); *Perrin v. United States,* 444 U.S. 37, 42-43 (1979); *SEC v. Graham*, 823 F.3d 1357, 1360 (11th Cir.2016).

The ordinary meaning of a "coupon" clearly includes Costa's Product Vouchers. The *Merriam-Webster's Collegiate Dictionary* defines "coupon" as including "a form surrendered in order to obtain an article, service, or accommodation." *Merriam-Webster's Collegiate Dictionary,* "Coupon," def. 2 (11th ed. 2012). Merriam-Webster's online dictionary defines "coupon" as including an instrument "that ***allows one to get a*** service or ***product for free*** or at a lower price." https://bit.ly/MerrWebCoupon ; *see Lumber Liquidators,* 952 F.3d at 488 (quoting same). Costa Product Vouchers, which may "allow[] one to get a product for free," clearly qualify as coupons. *See id.*

The *Oxford English Dictionary* similarly defines "coupon" to include "[a] form, ticket, part of a printed advertisement, etc., ***entitling the holder to a gift*** or discount, etc., ***or*** designed to be filled up by an intending user or purchaser and forwarded to the advertiser for information, ***goods***, etc." 3 *Oxford English Dictionary*, "coupon" def. 2.a. (2d ed. 1989)(emphasis added). Plainly stated, "contemporary dictionaries generally define a 'coupon' as an item that entitles its holder to a free or discounted product." *Lumber Liquidators,* 952 F.3d at 488; *accord McKinney-Drobnis,* 16 F.4th at 612-13 (Miller, Cir.J.,

concurring)(citing contemporary dictionaries' definitions of "coupon"); *Tyler,* 150 F.Supp.3d at 60 & n.14. The Costa Product Vouchers in this case clearly qualify as coupons within the word's ordinary meaning.

This Court has twice held that the ordinary-meaning rule applies to CAFA's undefined terms. In *Ruhlen v. Holiday Haven Homeowners,* 28 F.4th 226, 229 (11th Cir.2022), this Court was constrained by "the ordinary meaning of the word 'motion'" when interpreting CAFA's use of that term in 28 U.S.C. §1453(c). "For good or ill," this Court held, "the ordinary meaning of the word 'motion' refers to a request or an application made by a party; it does not contemplate something a court does on its own." *Ruhlen,* 28 F.4th at 229. "'[W]e assume that the legislative purpose is expressed by the ordinary meaning—not the idiosyncratic meaning—of the words used.'" *Id.* (quoting *In re Wild,* 994 F.3d 1244, 1257 (11th Cir.2021)(en banc)).

In *Spencer v. Specialty Foundry Products*, 953 F.3d 735, 739 (11th Cir.2020), when called upon to interpret the phrase "an event or occurrence" that CAFA placed in 28 U.S.C. §1332(d)(11)(B)(ii)(I), this Court held:

> Because CAFA does not define the phrase "an event or occurrence," we interpret those words in accordance with

their plain and ordinary meaning. *See Barton v. U.S. Att'y Gen.,* 904 F.3d 1294, 1298 (11th Cir.2018)("[U]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." (quoting *Sebelius v. Cloer,* 569 U.S. 369, 376 (2013))).

To determine the ordinary meaning of an undefined statutory term, "we often look to dictionary definitions for guidance." *In re Walter Energy,* 911 F.3d 1121, 1143 (11th Cir.2018).

*Spencer,* 953 F.3d at 740. These decisions comport with the Supreme Court's approach to interpreting CAFA's undefined terms according to their ordinary meaning. *Mississippi ex rel. Hood v. AU Optronics Corp.,* 571 U.S. 161, 170-71 (2014)(interpreting CAFA using dictionary definitions for ordinary meaning of "plaintiff").

As a matter of law, then, Costa's Product Vouchers are coupons. Seventh Circuit caselaw strongly supports that conclusion. It soundly rejected any distinction between product vouchers and "coupons" when it held in *Redman v. RadioShack Corp.,* 768 F.3d 622, 636 (7th Cir.2014), that a $10 voucher good for any retail purchase at any RadioShack store is a "coupon" under CAFA. They do not cease to be coupons because they can be redeemed for a valuable product. *See id.*; *accord Lumber Liquidators,* 952 F.3d at 488; *In re Southwest Airlines Voucher Litig.,* 799 F.3d 701, 706 (7th Cir.2015).

The district court erred in this case by eschewing the ordinary-meaning rule that this Court's own CAFA decisions clearly mandate. Costa's Product Vouchers are coupons subject to 28 U.S.C. 1712.

> 2.    CAFA's Text, Structure, and Legislative History Indicate that the Coupons to which it Applies Can and Should Be Valuable and that CAFA's Attorney's Fee Provisions are Indeed Meant to Give Class Counsel Incentives to Ensure that Coupons in Class Actions Settlements in Fact be of Value to Class Members

The district court seemed to think that non-cash settlement are not subject to CAFA unless somehow abusive, and that Product Vouchers are not "coupons" unless they are essentially worthless. "Vouchers are not 'valueless,'" the district court reasoned, asserting that on the facts of this case "the vouchers are within the range of appropriate value to the class." DE151:37.

Yet Congress clearly intended for CAFA to apply to settlements that provide ***valuable coupons***, as well as to ones that offer only "worthless" discounts. That is the whole point of tying class counsel's attorney's fees to the value of coupons that are actually redeemed. This gives class counsel a strong financial incentive to ensure that coupons will in fact be valuable. "And to the extent the settling parties are correct that class members have a strong interest in receiving these

coupons, the coupon redemption rate should reflect that interest."

*EasySaver,* 906 F.3d at 756 n.6.

Turning to Senate Report No. 109-14, the district court acknowledged that Congress intended CAFA's coupon-settlement provisions to cover cases in which non-cash settlements "provide real benefits to consumer class members (e.g., where coupons entitle class members to receive something of value free of charge)." S.Rep. No. 109-14, at 31 (2005). According to the district court:

> Congress was particularly concerned about "settlements under which class members receive nothing but essentially valueless coupons, while the class counsel receive substantial attorneys' fees." S. Rep. No. 109-14, at 30 (2005). Critically, "[t]he committee wish[ed] to make clear that it [did] not intend to forbid all non-cash settlements. ***Such settlements may be appropriate where they provide real benefits to consumer class members (e.g., where coupons entitle class members to receive something of actual value free of charge)*** or where the claims being resolved appear to be of marginal merit." *Id.* at 31.

DE151:34 (quoting S. Rep. No. 109-14, at 30-31)(emphasis added).

The important point here is that coupons providing real benefits, such as a free product, do not for that reason cease to be coupons. Coupons, the Senate Report emphasized, "may be particularly appropriate in situations 'where they provide real benefits to consumer

class members.' " *Chambers,* 980 F.3d at 669 (quoting *HP Inkjet,* 716 F.3d at 1178 n.4 (quoting S.Rep. No. 109-14, at 31)).

Thus, even if the Product Vouchers in this case "provide real benefits to consumer class members" because the "***coupons*** entitle class members to receive something of actual value free of charge" they are coupons none the less. S.Rep. No. 109-14, at 30-31 (emphasis added). The district court's contrary view that a coupon is not a coupon so long as it meets a subjective threshold of "appropriate value" is at odds with CAFA's plain language, structure, intent and legislative history.

### 3. Even Applying the *Online DVD* Framework, the Product Vouchers are Coupons

Even applying *Online DVD*'s non-definitional and impressionistic approach, Costa's Product Vouchers clearly are coupons rather than cash equivalents like the gift cards in *Online DVD*.

*Online DVD* "outlined three factors to guide the inquiry of whether settlement relief should be considered a coupon under CAFA: "'(1) whether class members have "to hand over more of their own money before they can take advantage of" a credit, (2) whether the credit is valid only "for select products or services," and (3) how much flexibility the credit provides, including whether it expires or is freely

transferrable.'" *McKinney-Drobnis,* 16 F.4th at 602 (quoting *EasySaver,* 906 F.3d 747 (quoting *OnlineDVD,* 779 F.3d at 951)).

As to the first factor, *Online DVD* class members "had the option of obtaining cash instead of a gift card, undercutting the argument that the settlement forces them to buy from the defendant." *Online DV*D, 779 F.3d at 952. Class members here cannot opt to receive cash instead of Costa Product Vouchers, which can be used ***only*** to buy products from Costa. Although the RSA misdescribes them as "akin to a gift card," it clearly specifies that "each separate Product Voucher is subject to one-time use with no residual value." RSA§IV(F)(DE98-1:17[ECFp18]). Thus, if a Product Voucher is used in a purchase transaction below its face value, the difference between the purchase price and face value will be forfeited. Class members who wish to avoid such forfeitures, are forced to hand over more money by purchasing Costa products exceeding the vouchers' face value. Each Product Voucher's face value is enough to cover only decals or t-shirts or other low-end promotional items carrying Costa's logo and promoting its business. Class members who wish to purchase Costa's primary product, high-priced sunglasses, will have to spend a lot of their own

money. This first factor favors recognizing that the Product Vouchers are coupons.

The second *Online DVD* factor asks whether the credit is valid only "for select products or services." Here, the handful of products that Costa "sells pale in comparison to the millions of low-cost products that Walmart sells." *McKinney-Drobnis,* 16 F.4th at 605. Much like the Massage Envy defendant in *McKinney-Drobnis,* Costa "is a highly specialized retailer and, although it offers more than 200 products, all of the products fall under the same umbrella category," *id.*, all being related to high-end sunglasses, and associated items like Costa-logo t-shirts and decals promoting the expensive sunglasses. So this factor too favors finding that the Product Vouchers are coupons. *Id.*

The third *Online DVD* factor is how much flexibility the instrument provides, including whether it expires or is freely transferrable. Here, although the Product Vouchers are freely transferable, they expire in two years. With their one-use restriction they plainly lack the flexibility of the vouchers in *McKinney-Drobnis,* where "class members could keep going back and buying products over time until the value of their voucher is fully extinguished." *McKinney-*

*Drobnis,* 16 F.4th at 605. So this factor also favors recognizing that the Product Vouchers are coupons. *See id.*

The vouchers must be deemed coupons, moreover, because they are not "equivalently useful" as cash. *EasySaver,* 906 F.3d at 758. And the district court knew it. Chief Judge Corrigan remarked at the final-approval hearing that "this voucher thing … I think we can all agree, based on redemption rates and based on other factors, is not the same as cash." DE146:73(lines10-12). He was right about that. They are not cash equivalents at all. They are coupons.

### B.    The District Court Erred in Relying on Decisions Holding that CAFA Permits the Award Lodestar-Methodology Fees for the Recovery of Coupons

CAFA directs: "If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. §1712(a). Compliance is not optional. "Congress's use of the words 'any' and 'shall' indicate that subsection (a) is not permissive." *HP Inkjet,* 716 F.3d at 1181; *accord McKinney-Drobnis,* 16 F.4th at 604 ("Section 1712(a) uses mandatory language").

"If the district court awards 'any' attorney's fees, and those attorney's fees are 'attributable to the award of coupons,' then the fees award must be calculated in the manner prescribed by §1712(a)(i.e., using the redemption value of the coupons)." *HP Inkjet,* 716 F.3d at 1181.

Sections 1712(b) and 1712(c) address settlements involving relief in addition to coupons, allowing for lodestar awards for non-coupon relief, but each does so without altering subsection (a)'s requirement that any attorney's fees for securing coupons must be based on the value of the coupons that are actually redeemed. Together subsections (b) and (c) provide that only to the extent that attorney's fees are sought for non-coupon-related aspects of a settlement "any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action." 28 U.S.C. §§1712(b), *see also* §1712(c)(2). Subsection (b) specifies that "Nothing ***in this subsection*** shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees," 28 U.S.C. §1712(b)(emphasis added), for relief obtained that is unrelated to coupons. It is subsection (a) that overrides lodestar fee awards for the

recovery of coupons. And nothing in subsections (b) and (c) changes that.

That subsections (b) and (c) are poorly framed, convoluted, and perhaps even a little redundant, is no reason for interpreting them to gut the statute's core requirement that attorney's fee awards for the coupon component of a settlement must be based on the value of the coupons that are actually redeemed. Though they are no model of concise drafting, "[s]till, when §1712(a)-(c) are 'interpreted collectively and in context, and read together with the statute's purpose and legislative history,' … their meaning is clear." *HP Inkjet,* 716 F.3d at 1181.

Thus, as the Ninth Circuit held in *HP Inkjet,* CAFA mandates that any attorney's fee award sought for the recovery of coupons "shall be based on the value to class members of the coupons that are redeemed," 15 U.S.C. §1712(a), while permitting lodestar fees for work unrelated to recovering the coupons. *See HP Inkjet,* 716 F.3d at 1181-86; *EasySaver,* 906 F.3d at 62-65; *Chambers,* 980 F.3d at 658-59, 662-64.

The Seventh Circuit found otherwise in *Southwest Airlines,* asserting that "[o]ne basic tool in statutory interpretation is the canon

against surplusage," and concluding that some overlap in the provisions of subsections (b) and (c) requires eliminating the effect of subsection (a). *See Southwest Airlines,* 799 F.3d at 710. That is a gross misuse of the canon against surplusage, a mere tool that should never be permitted to override congressional purpose.

"If one possible interpretation of a statute would cause some redundancy and another interpretation would avoid redundancy, that difference in the two interpretations can supply a clue as to the better interpretation of a statute. But only a clue. Sometimes the better overall reading of the statute contains some redundancy." *Rimini Street, Inc. v. Oracle USA,* 139 S.Ct. 873, 881 (2019). The Supreme Court has many times held that "some 'redundancy is "hardly unusual."'" *Rimini Street,* 139 S.Ct. at 881 (quoting *Marx v. General Revenue Corp.,* 568 U.S. 371, 385 (2013)). Here, as elsewhere, "Congress may have 'employed a belt and suspenders approach' in writing the statute." *Facebook v. Duguid,* 141 S.Ct. 1163, 1172 n.7 (2021)(quoting *Atlantic Richfield Co. v. Christian,* 140 S.Ct. 1335, 1350 n. 5 (2020)). Interpreting CERCLA's provision calling for exclusive federal jurisdiction, for example, the Supreme Court held that "'[s]ometimes the

better overall reading of [a] statute contains some redundancy.'"
*Atlantic Richfield,* 140 S.Ct. at 1350 n.5 (quoting *Rimini Street,* 139
S.Ct. at 881). The Court found it "much more likely that Congress
employed a belt and suspenders approach to make sure that ***all***
CERCLA lawsuits are routed to federal court than that Congress
intended the reference to federal courts in §113(h) to affect state
courts." *Id.*; *see also Territory of Guam v. United States*, 141 S.Ct. 1608,
1615 (2021)(again rejecting efforts to "avoid surplusage at all costs").
Here it is much more likely that Congress intended to preserve
subsection (a)'s rule that any attorney's fees for securing coupons be
based on the percentage of coupons that are actually redeemed.

That interpretation comports with this Court's common-sense
approach to redundancy and surplusage, which recognizes that
"Congress often uses a 'belt-and-suspenders' approach when drafting
statutes." *In re Wild,* 994 F.3d 1244, 1268 n.22 (11th Cir.2021)(en banc).
Even the Seventh Circuit has come to realize that applying the anti-
surplusage canon to CAFA's provisions may have profoundly anti-
democratic consequences considering empirical research showing that
"drafters of legislation often 'intentionally err on the side of redundancy'

as a precautionary measure and as a response to political demands."
*Schutte v. Ciox Health, LLC,* 28 F.4th 850, 862-63 (7th Cir.2022). That
CAFA may be poorly drafted weighs against imposing the canon against
surplusage, as any "'statute that is the product of compromise may
contain redundant language as a by-product of the strains of the
negotiating process.'" *Id.* at 863 (quoting Richard A. Posner, *Statutory
Interpretation—in the Classroom and in the Courtroom,* 50 U.Chi.L.Rev.
800, 812 (1983)).

Nonetheless, several circuits have rejected *HP Inkjet'*s common-
sense interpretation of CAFA's attorney's fee provisions, in favor of
*Southwest Airline'*s holding that that CAFA authorizes lodestar-
methodology fee awards for the recovery of coupons. The Eighth Circuit
held in *Galloway* that "the Seventh Circuit's interpretation of §1712 is
more consistent with the substantial discretion district courts have
always had to determine the reasonable attorney's fee to award to the
prevailing party in a class action case." *Galloway,* 833 F.3d at 975. This
ignores the fact that CAFA is clearly designed to limit district courts'
discretion in awarding attorney's fees. And fees awarded from a
common-fund settlement are not "prevailing party" fees.

The Sixth Circuit in *Linneman* suggested that the Ninth Circuit's construction of §1712(a) "runs headfirst into §1712(b)(1), which provides for use of the lodestar method if 'a portion of the recovery of the coupons is not used to determine the attorney's fee.'" *Linneman,* 970 F.3d at 628. But §1712(b)(1) merely indicates that the lodestar methodology applies to the extent that an award of attorney's fees is not based on the recovery of coupons. And §1712(c) confirms as much for cases like this, also involving injunctive relief:

> If a proposed settlement in a class action provides for an award of coupons to class members and also provides for equitable relief, including injunctive relief—
>
> > (1) that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a); and
> >
> > (2) that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (b).

28 U.S.C. §1712(c). In other words, the lodestar methodology only applies to attorney's fees for non-coupon relief.

Finally, the Fourth Circuit in *Lumber Liquidators II* followed *Southwest Airlines, Galloway,* and *Linneman,* as the "prevailing

interpretation of CAFA," but added nothing to those decisions' persuasiveness on this point. *In re Lumber Liquidators,* 27 F.4th 291, 302 (4th Cir.2022)("*Lumber Liquidators II*"). The Ninth is correct— CAFA's requirement that attorney's fees for recovering coupons "shall be based on the value to class members of the coupons that are redeemed," 28 U.S.C. §1712(a), cannot be overridden by instead basing those coupon-related fees on the attorneys' lodestar.

### C.    Even Assuming CAFA Permitted a Lodestar Award, the District Court Neither Performed Any Legitimate Lodestar Analysis nor Awarded a Lodestar Fee, and the Multiplier is Wholly Unsupported

Assuming arguendo that CAFA permitted the district court to award attorney's fees for the recovery of coupons using the lodestar methodology, the district court awarded no such fee. It utterly failed to conform to the requirements of the lodestar methodology. And nothing in the record supports a lodestar-multiplier of 2.8.

The lodestar method requires a court first to calculate the attorneys' reasonable lodestar, and then to evaluate whether any extraordinary circumstances justify a departure from the lodestar amount that is strongly presumed to be the appropriate fee award. The district court performed no such analysis.

Instead, it merely took the $8 million percent-of-fund fee it had just awarded under the *Johnson* factors and divided the $8 million (less expenses) by Class Counsel's claimed lodestar to derive a cross-check multiplier of 2.8 that it thought reasonable because some other courts have tolerated even larger multipliers when cross-checking percent-of-fund awards.

This is the district court's entire lodestar analysis:

> Turning to the lodestar method, as of February 2021, Class Counsel had incurred $2,615,374 in attorneys' fees and $641,154.87 in expenses, totaling $3,256,528.87.22 (Doc. 109 at 13 n.7). An $8 million attorneys' fees award means the Court would apply a multiplier of approximately 2.8, which is appropriate, plus expenses and costs included in the $8 million total. This method would not only satisfy CAFA but also serves as a check on the *Camden I* percentage approach.

DE151:43-44 (footnote omitted; citing district court cross-check cases tolerating multipliers of 8 and more).

That is not how a court proceeds in granting a lodestar fee award. For one thing, a lodestar is the product of attorney's reasonable time multiplied by reasonable billing rates. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," to produce the lawyers' "lodestar." *Hensley v. Eckerhart,* 461 U.S.

424, 433 (1983). A fee award under the lodestar methodology cannot start with calculating fees as some percentage of a fund. The lodestar methodology starts by critically examining the lawyers' claimed time in light of the result achieved, and making reductions for any billings that were not both reasonably necessary and fully warranted by that result.

A district court may begin with, but it cannot uncritically accept, the attorney's claimed lodestar. The district court must carefully review all the time claimed and must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley,* 461 U.S. at 434 (citation omitted); *accord, e.g., Caplan v. All Am. Auto Collision,* __F.4th__, 2022 WL 1939553, at *4 (11th Cir. June 6, 2022); *Norman,* 836 F.2d at 1301; *ACLU v. Barnes*, 168 F.3d at 428.

"Generalized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight." *Norman,* 836 F.2d at 1301 (citing *Hensley,* 461 U.S. at 439 n. 15). "In making adjustments to hours claimed, the district court is charged with deducting for redundant hours." *Id.* "Moreover, our decisions contemplate a task-by-task examination of the hours billed." *ACLU v. Barnes,* 168 F.3d at 429; *see, e.g., Duckworth v. Whisenant,* 97

F.3d 1393, 1398 (11th Cir.1996). Under *Hensley,* "[t]he district court is not only required to determine whether the total hours claimed are reasonable, but also whether particular hours claimed were reasonably expended."[2]

The district court conducted no such review in this case. That, of course, is reversible error.

Neither did the district court in this case conduct an appropriate analysis of whether the lodestar should be adjusted in light of the results obtained.

> After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained. If the result was excellent, then the court should compensate for all hours reasonably expended. … If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. *Hensley,* 461 U.S. at 436-37. … A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. *Id.* at 435, 440.

*Norman*, 836 F.2d at 1302.

---

[2] *Alberti v. Klevenhagen,* 896 F.2d 927, 932 & n.5 (5th Cir.), *modified*, 903 F.2d 352 (5th Cir.1990). Ordinarily, "when hours are disallowed the court should identify the [specific] hours disallowed and explain why they are disallowed." *Caplan,* 2022 WL 1939553, at *8.

"Any enhancement begins with a finding that the results were exceptional," *id.,* a finding that is entirely absent from the decision below. The district court impermissibly "skipped over a crucial question: whether this case involves 'rare and exceptional circumstances.'" *Linneman,* 970 F.3d at 631-32 (quoting *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010)). "Even if the court found the results obtained to be exceptional, no enhancement for these results would be justified unless the court also finds that class counsel's representation was superior to that which would have been expected considering the rates requested." *Norman,* 836 F.2d at 1306 (citing *Blum*, 465 U.S. at 899). The district court made no such finding in this case. Nor would any such finding have found support in the record.

A lodestar-methodology fee award cannot skip over "the important factor of the 'results obtained.'" *Hensley,* 461 U.S. at 434 (citation omitted). This consideration is particularly important in a case like this, where the attorneys failed to win a substantial cash judgment for the class, but instead settled for nonmonetary in-kind relief in the form of Product Vouchers restricted to purchase of Costa products merchandised on its website, with Class Counsel trying to take all, but

ending up with only ***most*** of the cash. *See Linneman,* 970 F.3d at 634; *Galloway,* 833 F.3d at 975. And even if "CAFA doesn't require district courts to calculate attorney's fees based on the percentage method in every coupon settlement," coupon "redemption rates should still play a crucial role in assessing the reasonableness of a fees award." *Linneman,* 970 F.3d at 634; *accord, Galloway,* 833 F.3d at 975; *Redman,* 768 F.3d at 633-35.

Where, as here, "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley,* 461 U.S. at 436.

> A conclusory statement that a fee is reasonable in light of the success obtained is generally insufficient. *Hensley*, 461 U.S. at 439 n. 15. The court's order on attorney's fees must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation.

*Norman,* 836 F.2d 1292, 1304 (11th Cir.1988).

The district court failed to do any of the analysis required for a lodestar-methodology attorney's fee award. It conducted a cursory lodestar cross-check of the $8 million percent-of-fund award, nothing more.

Using the percent-of-fund award to establish 2.8 as a reasonable lodestar multiplier is also problematic because the percent-of-fund award used to justify that multiplier was itself based on the so-called *Johnson* factors, which the Supreme Court has specifically disapproved as too subjective in lodestar cases to "permit[] meaningful judicial review," *Perdue,* 559 U.S. at 551-52, and that can seldom be used to justify a multiplier without impermissible "double-counting" of considerations already "subsumed" in the lodestar. "[T]here is a strong presumption that the [unenhanced] lodestar is sufficient; factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Perdue,* 559 U.S. at 546.

The district court's analysis in this case violated those most fundamental precepts. For the percent-of-fund fee award, from which it derived a lodestar multiplier of 2.8, was explicitly based on *Johnson* factors that are already subsumed and that cannot be relied upon to

justify a multiplier. Indeed, the district court made clear its reliance

upon *Johnson* factors already subsumed in the lodestar. It wrote:

> District courts must "articulate specific reasons for selecting the percentage upon which the attorneys' fee award is based." *Camden I,* 946 F.2d at 775. The *Johnson* factors to consider include: "(1) [t]he time and labor required;" "(2) [t]he novelty and difficulty of the questions;" "(3) [t]he skill requisite to perform the legal service properly;" "(4) [t]he preclusion of other employment by the attorney due to acceptance of the case;" "(5) [t]he customary fee;" "(6) [w]hether the fee is fixed or contingent;" "(7) [t]ime limitations imposed by the client or the circumstances;" "(8) [t]he amount involved and the results obtained;" "(9) [t]he experience, reputation, and ability of the attorneys;" "(10) [t]he 'undesirability' of the case;" "(11) [t]he nature and length of the professional relationship with the client;" and "(12) [a]wards in similar cases." *Johnson,* 488 F.2d at 717-19.
>
> The Court has considered each of these factors and is especially struck by the time required of Class Counsel—well over 6,000 hours—and the complexity of managing three cases that involved novel legal issues. These claims involved a unique issue under FDUTPA, potential ambiguity in the MMWA, and extensive fact and expert discovery, including numerous depositions requiring intensive preparation. Class Counsel is experienced and reputable and took on significant contingency risk knowing that Costa could afford and would retain its own experienced, reputable counsel, which expended 15,000 hours in defending the cases. …

DE151:41-42.

Thus, the 2.8 multiplier is based on the district court's use of the

*Johnson* factors to establish the $8 million percent-of-fund fee award.

That is wholly impermissible. In *Perdue* the Supreme Court specifically rejected use of the *Johnson* factors to award attorneys a multiplier of their lodestar. *See Perdue,* 559 U.S. at 552-53.

Even before *Perdue,* both the Supreme Court and this Court had long held that district judges may not employ *Johnson* factors to enhance a lodestar fee award if a factor already is reflected in the lodestar. *See, e.g., City of Burlington v. Dague*, 505 U.S. 557, 563 (1992)(warning against *Johnson* analysis that "amounts to double counting" of factors already reflected in lodestar); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 566 (1986)((*Delaware Valley I*)(warning against the "danger of 'double counting.'").

That means the *Johnson* factors cannot be relied upon to support a multiplier. This Court holds "that the lodestar ... presumptively includes all of the twelve factors." *Norman,* 836 F.2d at 1298-99. "The *Johnson* factors are to be considered in determining the lodestar figure; they should not be reconsidered in making either an upward or downward adjustment to the lodestar—doing so amounts to double-counting." *Bivins,* 548 F.3d at 1352. "[A]n enhancement may not be

awarded based on a factor that is subsumed in the lodestar calculation."
*Perdue,* 559 U.S. at 553. "That would be 'double counting'—i.e., a
windfall." *In re Home Depot,* 931 F.3d 1065, 1083 (11th Cir.2019).

Here, to the extent that the district court discussed the *Johnson*
factors in awarding attorney's fees, they were indeed already clearly
subsumed in Class Counsel's claimed lodestar—and thus can provide no
basis for a multiplier. The district court was "especially struck by the
time required of Class Counsel—well over 6,000 hours—and the
complexity of managing three cases that involved novel legal issues."
DE151:41. But the hours billed are, by definition, already included in
the attorneys' lodestar, and can provide no ground for enhancing it with
a multiplier. And *Perdue* holds that "the novelty and complexity of a
case generally may not be used as a ground for an enhancement
because these factors 'presumably [are] fully reflected in the number of
billable hours recorded by counsel.'" *Perdue,* 559 U.S. at 553 (citation
omitted); *accord Blum*, 465 U.S. at 898-900.

The district court's *Johnson* factors analysis emphasized that
"Class Counsel is experienced and reputable and took on significant
contingency risk knowing that Costa could afford and would retain its

own experienced, reputable counsel, which expended 15,000 hours in defending the cases." DE151:40-41. "[B]ecause considerations concerning the quality of ... counsel's representation normally are reflected in the reasonable hourly rate, the overall quality of performance ordinarily should not be used to adjust the lodestar, thus removing any danger of 'double counting.'" *Delaware Valley I,* 478 U.S. at 566. Any "adjustment for quality of representation is a clear example of double counting." *Blum,* 465 U.S. at 899.

The hours billed by ***opposing counsel*** provide no basis for padding Class Counsel's attorney's fees.[3] And the Supreme Court has held that

> an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar. The risk of loss in a particular case (and, therefore, the attorney's contingent risk) is the product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits. The second factor, however, is ordinarily reflected in the lodestar—either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so. *Blum, supra*, at 898-99. Taking account of it again through lodestar enhancement amounts to double

---

[3] "[T]he time expended by opposing counsel is seldom relevant to a determination of hours reasonably expended" by plaintiff's counsel, let alone to applying a multiplier to those hours. *See Norman,* 836 F.2d at 1306 n.3.

counting. *Delaware Valley II,* 483 U.S., at 726-727 (plurality opinion).

*Dague,* 505 U.S. at 562-63. To the extent that Class Counsel faced any risk of loss by pursuing the case through trial, moreover, settling the case eliminated that risk. Class Counsel should not receive an attorney's fee enhancement to compensate for a risk avoided—particularly as the class they represented is likely to be risk neutral. And even if "litigation risk must be measured as of when the case is filed," *Goldberger v. Integrated Resources,* 209 F.3d 43, 55 (2d Cir.2000), the reality is that "class actions invariably are settled." *Eubank v. Pella Corp.,* 753 F.3d 718, 720 (7th Cir.2014)(Posner, J.). Risk of loss at trial is irrelevant because class actions almost never go to trial.

The district court's assessment that its lodestar cross-check "satisfies CAFA" was incorrect; there is therefore no basis for affirming the result below on the ground that the district court could have chosen to apply the lodestar methodology. It failed to do any proper lodestar analysis.

D.    **The District Court Erred in Approving as Fair Reasonable and Adequate a Settlement Agreement that Allocated All or Most of the Cash Recovered to Class Counsel as Attorney's Fees and Contained Red Flags of Conflicted Interests and Collusion**

CAFA mandates that "[i]n a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. §1712(e). As Amended in 2018, moreover, Rule 23(e) requires a district court before approving any class-action settlement to evaluate whether "the relief provided for the class is adequate, taking into account: … (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; [and] (iii) the terms of any proposed award of attorney's fees, including timing of payment." Fed.R.Civ.P. 23(e)(2)(C)(ii), (iii). The Second Circuit has aptly described Rule 23(e)(2)(C) as a "backstop that prevents unscrupulous counsel from quickly settling a class's claims to cut a check" and that requires "judicial review of class-action settlements with a 'searching assessment' of counsel's fee award." *Fresno County Employees' Ret.*

*Assoc. v. Isaacson/Weaver Family Trust,* 925 F.3d 63, 71-72 (2d Cir.2019); *see Briseño v. Henderson*, 998 F.3d 1014, 1024 n.2 (9th Cir.2021).

A reviewing court may "overturn an approval of a compromised settlement" on substantive grounds if "the terms of the agreement contain convincing indications" that attorneys' "self-interest rather than the class's interests in fact influenced the outcome of the negotiations." *Roes 1-2,* 944 F.3d at 1050 (quoting *Allen v. Bedolla,* 787 F.3d 1218, 1223 (9th Cir.2015)(quoting *Staton,* 327 F.3d at 960)).

The Ninth Circuit has warned that courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Products Liability Litig.,* 654 F.3d 935, 947 (9th Cir.2011). *Bluetooth* gave three examples of such signs: (1) "when counsel receive a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries 'the potential of enabling a defendant to pay class counsel excessive fees and

costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal citations omitted). The RSA was loaded with such red flags signaling that the settlement was negotiated primarily to benefit Costa and Class Counsel, at the expense of the represented class.

That the primary concern was attorney's fees can be seen in the fact that the Settling Parties attempted to allocate ***the entirety*** of the $12 million cash provided by the RSA to Class Counsel as attorney's fees. As it was, the district court awarded ***two-thirds*** of the $12 million cash fund to the lawyers.

The exorbitant attorney's fees agreed to by the parties here are an indicator of collusion. In class-action settlements, one of the "unique due process concerns for absent class members" is an "inherent risk ... that class counsel may collude with the defendants, 'tacitly reducing the overall settlement in return for a higher attorney's fee.'" *Bluetooth*, 654 F.3d at 946 (citations omitted); *accord Roes 1-2,* 944 F.3d at 1051 n.14 (quoting *Bluetooth). "*Thus, if the 'fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial

concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained.'" *In re Dry Max Pampers Litig.,* 724 F.3d 713, 718 (6th Cir.2013)(quoting *Staton,* 327 F.3d at 964); *accord Roe 1-2,* 944 F.3d at 1051 n.14.

"[C]oncerns about the fairness of settlement agreements 'warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement.'" *Staton,* 327 F.3d at 953 (citation omitted); *accord, e.g., Roes 1-2,* 944 F.3d at 1051. That is exactly what the record in this case reflects—a Settlement Agreement driven by fees, with Costa promising not to object to the entirety of the RSA's $12 million cash fund being allocated to Class Counsel. RSA§X(A)(DE98-1:27-28[ECFpp28-29].

That is what the precedents call a "clear-sailing" agreement. And "'clear sailing' agreements on attorneys' fees are important warning signs of collusion'" in class-action settlements because '[t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.'"

*Roes 1-2,* 944 F.3d at 1051 (citations omitted); *accord Briseño,* 998 F.3d at 1027; *Bluetooth*, 654 F.3d at 948.

Moreover, although the RSA provided that any reduction of the proposed $12 million in cash attorney's fees would "inure to the benefit of the class," RSA§X(A)(DE98-1:27-28[ECFpp28-29], the parties and district court assumed that this would be accomplished by an increase in the face value of the vouchers. DE202:15(lines13-189). Many of course would never be redeemed, and even redeemed vouchers would entail less cost to Costa than a cash distribution. The district court recognized this when it remarked at the final-approval hearing that Costa would benefit from a reduction of attorney's fees if it could keep the cash and just issue more in vouchers:

> THE COURT: So anything that I give less than $12 million to you or to your firm -- so let's say it's $2 million less, so it's – let's say it's 10 million and it's 2 million less. That goes back into the voucher pool and increases the amount of the vouchers by whatever the factor is … -- ***that's a windfall for Costa, isn't it?***
>
> Because instead of actually paying out 2 more million dollars in cash, they've now got ***this voucher thing***, which ***I think we can all agree***, based on redemption rates and based on other factors, ***is not the same as cash***.
>
> MR. HARGITAI: That is true, Your Honor. …

- 59 -

DE146:72(line7)-73(line12).

Actually, the fact that Costa would benefit from the expiration of unredeemed Product Vouchers itself amounts to a "kicker" on the facts of this case—yet another red flag of collusion: "A 'kicker' or reversion clause directs unclaimed portions of a settlement fund … to be paid back to the defendant." *Roes 1-2*, 944 F.3d at 1059 (citation omitted).

But the parties went much further in this case than anything *Bluetooth* or *Roes 1-2*, by inserting in the RSA additional, truly unprecedented provisions manifestly demonstrating that the settlement was entirely fee-driven. One was the anti-CAFA "kill switch," voiding the entire deal "if the Court construes the settlement as a 'coupon' settlement such that the provisions of 28 U.S.C. §1712 apply." RSA§V(B)(DE98-1:13[ECFp14]. Another was the anti-objector clause, stating that "the Parties hereto agree that a Class Member who objects to the Settlement shall not be entitled to recovery of all or any portion of Attorneys' Fees, Costs and Expenses, and that the equitable common-fund doctrine does not apply to this Settlement." RSA§IX(C)(DE98-1:27[ECFp28]).

The "kill switch" was an overt attempt to condition class relief on Class Counsel obtaining an excessive fee, by allowing them to scuttle the entire settlement if the district court subjected their attorney's fees to CAFA's coupon-settlement attorney's fee provisions. Davis's Objection pointed out that this involved Class Counsel in a gross conflict of interest, for class-action plaintiffs' counsel are flatly prohibited from putting their own interests before those of the class by holding a class-action settlement hostage to obtain their desired fee. DE112:3,15; *see Staton*, 327 F.3d at 969 (fee determination cannot be removed from district court's discretion by agreement of the parties); *Shapo v. Engle*, 463 F.3d 641, 646 (7th Cir. 2006)(settling defendant's counsel "would have been in breach of its fiduciary duty to its client had it blocked settlement merely to obtain an advantageous forum in which to collect its legal fees if the client failed to pay them.").

The clause purporting to prohibit objectors' counsel from obtaining fees, RSA§IX(C)(DE98-1:27[ECFp28]), which the district court struck "as against public policy," DE151:27, was another grossly improper attempt to insulate Class Counsel's exorbitant attorney's fees

The district court thought these offences cured by not enforcing them. But the problem is that they infected the settlement process at the class's likely expense. Where Class Counsel create a conflict of interest by their improper pursuit of fees their representation cannot be deemed adequate or deserving of any attorney's fee award. *See Rodriguez v. Disner*, 688 F.3d 645, 653-58 (9th Cir. 2012).

The district court erred by approving the settlement as fair, reasonable, and adequate, and by finding Class Counsel provided adequate representation.

### E.    The District Court Erred by Including $5 Million in the Common Fund as the Value of Injunctive Relief that Named Plaintiffs Likely Lacked Article III Standing to Pursue as It Related to Marketing Practices that Costa Voluntarily Abandoned Before the Complaint in this Action was Filed

The district court also erred in valuing the purported injunctive relief at $5 million, and adding it to the supposed value of the fictitious Settlement Fund—both in evaluating the Settlement's fairness, reasonableness, and adequacy, and also in calculating Class Counsel's percent-of-fund attorney's fee award. For although the district court placed the cost of Costa's compliance with the RSA's injunctive element at $5 million, in truth Costa's cost of compliance was zero—it had

voluntarily ceased the challenged marketing practices in early 2018, some seven months before this action was filed. *See infra* 64-65. The value to the class was effectively zero for the same reason. An injunction requiring Costa to do in the future something it had already voluntarily done three years before is of no readily apparent value to the class.[4] It is doubtful that the Named Plaintiffs possess Article III standing to seek prospective injunctive relief. *See Kennedy,* 998 F.3d at 1231 ("standing to pursue injunctive relief requires a separate showing of a real and immediate threat of future injury"); *Berni v. Barilla SpA,* 964 F.3d 141, 146-47 & n.27 (2d Cir.2020).

It is, in any event, reversible error for a district court to include injunctive relief in valuation of the fund from which it awards a percent-of-fund attorney's fee—particularly in a case like this, where no one asked the district court to do so. Settling "'parties ordinarily may not include an estimated value of undifferentiated injunctive relief in

---

[4] *See Bluetooth*, 654 F.3d at 945 n.8 ("***the value of the injunctive relief is not apparent*** to us from the face of the complaint, which seeks to recover significant monetary damages for alleged economic injury, nor from the progression of the settlement talks, the last of which occurred ***after defendants had already voluntarily added new warnings to their websites and product manuals***")(emphasis added).

the amount of an actual or putative common fund for purposes of determining an award of attorney's fees.'" *Roes 1-2,* 944 F.3d at 1056 (quoting *Staton,* 327 F.3d at 974); *accord, e.g., Kim,* 8 F.4th at 1181; *In re Excess Value Ins. Coverage Litig.,* 598 F.Supp.2d 380, 387-88 (S.D.N.Y. 2005). Thus "the court should have excluded the injunctive relief estimate in its calculation of reasonable attorneys' fees under the percentage-of-recovery method." *Kim,* 8 F.4th at 1181. Its failure to do so is reversible error.

Davis objected below that the value of the supposed injunctive element of the RSA was too doubtful given the fact that Costa had ceased the challenged conduct three years before the RSA was negotiated. DE112:19-20[ECFpp20-21]&n.16. Class Counsel had acknowledged at a December 13, 2019, status conference that Costa had "fixed the situation a couple of years back. … And so our class only goes up until the time when they were purchased by Essilor and they changed the way they did business." DE200:6(lines3-6). With  no need for injunctive relief (and no Article III standing to pursue it) the class was seeking money damages, as "there are still hundreds of thousands

of consumers that paid, in essence, an illegal fee under the complaint."
DE200:6(lines7-9).

This action was filed on August 20, 2018, DE1, more than seven
months after Costa had voluntarily ceased its challenged marketing
practices. In a May 1, 2020, declaration supporting preliminary
approval of this action's settlement, Class Counsel attested that Costa
had changed its ways "as of January 1, 2018," DE109-2:9¶21, nearly
eight months before the Complaint in this case was filed. DE109-
2:9¶221; *see also* DE109-2:12¶28; DE109-2:15¶34.

Even assuming the Named Plaintiffs somehow had Article III
standing to pursue injunctive relief, the district court erred both in
finding that prospective injunctive relief was of significant value to the
class, and also in finding that compliance with the RSA's injunctive
relief would cost Costa $5 million. It did so on the basis that "Costa's
Vice President and Controller Felicia Morrisey has said that the cost of
replacing packaging and/or implementation of program changes costs $5
million at minimum for Costa. (Doc. 135-4 at 4)." DE151:22-23. What
Morrisey actually said—in a November 14, 2017, declaration supporting
removal of a Texas state-court action to the U.S. District Court for the

Southern District of Texas—was that "if the cost of replacing packaging and/or implementation of changes" sought in the Texas action "was only $500 per store, the cost of implementation of Plaintiff's requested changes would easily reach $5,000,000." DE135-4:4¶9. She never testified that compliance with the RSA's injunctive relief in this case would cost Costa anything. The real cost of compliance is zero, as Costa voluntarily ceased the challenged practices three years before.

The district court clearly "should have excluded the injunctive relief estimate in its calculation of reasonable attorneys' fees under the percentage-of-recovery method." *Kim,* 8 F.4th at 1181.

## VII.  CONCLUSION

The judgment below should be reversed.


Date:  June 15, 2022          Respectfully submitted,


                              /s/ Eric Alan Isaacson
                              LAW OFFICE OF ERIC ALAN ISAACSON
                              Eric Alan Isaacson
                              6580 Avenida Mirola
                              La Jolla, CA   92037-6231
                              Telephone: (858) 263-9581
                              ericalanisaacson@icloud.com

                              C. BENJAMIN NUTLEY
                              nutley@zenlaw.com

1055 E. Colorado Blvd., 5th Floor
Pasadena, CA   91106
Telephone:  (626) 204-4060

## VIII. CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief, which has been prepared in proportionally spaced Century Schoolbook 14-point font, complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6). It contains 12,924 words as counted by the Microsoft Word (version 16.60(22041000)) word-processing system used to prepare the Brief, exclusive of the parts of the Brief exempted from the type-volume limitation by Federal Rule of Appellate Procedure 32(f).

_/s/ Eric Alan Isaacson_
LAW OFFICE OF ERIC ALAN ISAACSON
Eric Alan Isaacson
6580 Avenida Mirola
La Jolla, CA   92037-6231
Phone: (858) 263-9581
email: ericalanisaacson@icloud.com

## IX. CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2022, I am electronically filing the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will send notice of this filing to all parties through their counsel of record as indicated on the electronic filing receipt.

/s/Eric Alan Isaacson
LAW OFFICE OF ERIC ALAN ISAACSON
Eric Alan Isaacson
6580 Avenida Mirola
La Jolla, CA   92037-6231
Phone: (858) 263-9581
email: ericalanisaacson@icloud.com